CITY OF GAINESVILLE, A MUNICIPALITY, *Appellant,* v. GAINESVILLE GAS AND ELECTRIC POWER COMPANY, A CORPORATION, *Appellee.*

Opinion Filed May 20, 1913.

1. The policy of the law is to require by mandatory process the performance by public utility corporations of their duties to the public.

2. A corporation engaged in furnishing electricity to a municipality or its inhabitants and using public streets or exercising other franchises or privileges in doing so, is thereby performing services of a public nature, within the meaning of the constitution and laws of this State, and such a corporation is subject to lawful governmental regulations to enforce its duties to the public it undertakes to serve.

3. An express contract is not essential to establish reciprocal rights between a public service company and the public it undertakes to serve. Such rights arise by implication of law.

4. Where a public utility company uses franchises and assumes the duty imposed by law to render a reasonably adequate service during the time its rights and duty may lawfully continue, such duty may be enforced by appropriate legal procedure where no adequate excuse for non-performance is appropriately shown.

5. Allegations that governmental regulations are in effect confiscatory and unduly arbitrary and burdensome to a public service company, do not justify the company in arbitrarily discontinuing the public service, for the company has adequate remedies by due course of law to protect itself against the enforcement of illegal governmental regulations.

6. While it is the duty of a public service company to observe all lawful municipal regulations, the company has a right to a reasonable compensation for the public service it renders and to the equal protection of the laws in every department of the government.

7. Illegal municipal regulations are not binding; but persons and corporations cannot be permitted to arbitrarily assume to remedy an alleged wrong by refusing to render a public service voluntarily undertaken.

8. The municipality is a proper party in proceedings to require a public service company to continue the performance of its public service in a reasonably adequate manner for the benefit of the city and its inhabitants.

Appealed from the Circuit Court of Alachua County.

Decree reversed.

*R. E. Davis,* for Appellant;

*W. S. Broome,* and *Thos. W. Fielding,* for Appellee.

WHITFIELD, J.—The city of Gainesville obtained an injunction restraining the Gas and Electric Company "from closing down or discontinuing its public service business" of furnishing electricity to the city and its inhabitants. A demurrer to the bill of complaint was interposed. This appeal is from an order "that the injunction be and the same is dissolved, with the right of the complainant to amend the bill in ten days from this date or the bill may be dismissed without prejudice to such other action as the complainant may be advised is proper." The question to be determined is whether there was error in dissolving the injunction.

The bill of complaint alleges in effect that the municipality has all the usual powers of cities in this State, and is authorized "to provide for the lighting of the streets of said city and to provide for the lighting of the said city by gas and other illuminating material and to do and perform all such other acts as shall seem necessary and best adapted to the improvement and general interest of said city, or as shall be necessary for the health, convenience and safety of its citizens;" that a charter was granted by the State to the defendant as a corporation, authorizing the corporation to exist for 99 years and, among other things, to engage in the business of manufacturing, generating, and selling electric current for lighting and

power purposes, such business to be engaged in the City of Gainesville; that thereafter the company erected "and constructed within the corporate limits of said City of Gainesville an electric lighting and power plant and by and with the permission of said city aforesaid, erected and constructed its poles and wire for the distribution of electric current over and along a large number of the streets of said city and from that date until the present time has been continuously engaged in the manufacture and sale of electricity for illuminating and power purposes; that during all that time and to this date the said Gainesville Gas and Electric Power Company have been continuously furnishing electricity to said city for the lighting of the streets, public places and public buildings of said city and are now furnishing electricity therefor, and that during all of said time it has furnished electricity to the inhabitants of said city who desired to procure the same and who paid therefor and that complied with the rules and regulations of such company, and that continuously from the time when said Gainesville Gas and Electric Power Company began the manufacture, generation and sale of such electricity it has sought to increase the number of consumers of its products among the inhabitants of said city and to induce them to abandon other systems and methods of illumination and to become consumers of its electric products, and that at the present time there are about six hundred and sixty (660) dwellings, stores and other buildings within said city which are supplied by it with electricity as the only means of illumination; that in addition thereto, said Gainesville Gas and Electric Power Company have been furnishing and selling electric motors for the furnishing of power for the operation of manufacturing plants and ginneries and has equipped and supplied its motors to cotton gins in

said town which it is estimated will gin during the coming season in the aggregate about 1,000 bales of cotton.

That there is also located in said City the University of the State of Florida, a State Institution of learning, which now consists of two dormitories with the aggregate of one hundred and fifty-six (156) bedrooms, four academic buildings completed and in use, two others that will shortly be completed and ready for use, at which University there will be in the coming scholastic year, beginning with the month of September, an attendance of from three hundred and fifty to four hundred students from about forty-four counties of this State; that in some of the academic buildings electricity is a necessity for the operation of machinery and appliances used in the course of study pursued therein, and in all thereof it is the sole and only means of illumination; that the said Gainesville Gas and Electric Power Company has been supplying said University of Florida with electricity for illumination and power purposes since the location and construction thereof within said city and that all the buildings thereon have been constructed soley for the use of electricity for the illumination thereof, and that the said Gainesville Gas and Electric Power Company has been receiving from said University between two hundred and two hundred and fifty dollars per month in payment for the electric current it has furnished therefor;" that said company is the only "person, firm or corporation in the said City of Gainesville engaged in the manufacture, generation and sale of electricity, that it has acquired and holds a valuable easement from said city in the permission granted it to use and in the use of the streets of said city wherein it has erected its poles and placed its wires for the purpose of conveying and by means of which it conveys its electric current and that

as a corporation authorized by the State of Florida to engage in the business of supplying a public utility it is the duty of said Gainesville Gas and Electric Power Company to continue to supply electric current as aforesaid to said city and those of its inhabitants who are consumers thereof, and that it is without power or authority to cease and discontinue such service to the said city, or such of its inhabitants who are consumers thereof, and that said City of Gainesville will be without ability to light the streets, or to properly protect the lives and property of its inhabitants, that such of its inhabitants who are consumers of electric current will be without adequate means for the illumination of their homes and places of business, that the producers of cotton who rely upon the ginning thereof by the ginneries located in said city will be obliged to haul their products for long distances to reach other ginneries and that the operation of the University of the State, the giving of its course of study and the opportunity properly to pursue the same will be greatly impaired and retarded in the event the said Gainesville Gas and Electric Power Company shall cease the manufacture and sale of electricity as it has announced its intention so to do, and that neither the said City of Gainesville, nor the other consumers of electricity among its inhabitants as aforesaid, can be adequately compensated in damages in the event of the wrongful discontinuance of the manufacture and sale of electricity by the said Gainesville Gas and Electric Power Company, and that your orator is without adequate remedy at law in the premises;" "that the company has published its intention to discontinue the public service it has undertaken to perform."

The policy of the law is to require by mandatory process the performance by public utility corporations of

their duties to the public.   State *ex rel.* Ellis v. Tampa
Water Works Co., 57 Fla. 533, text 539, 48 South. Rep.
639.

A corporation engaged in furnished electricity to a
municipality or its inhabitants and using public streets
or exercising other franchises or privileges in doing so, is
thereby performing services of a public nature, within
the meaning of the constitution and laws of this State,
and such a corporation is subject to lawful governmental
regulations to enforce its duties to the public it under-
takes to serve.   Such a corporation is manifestly a pub-
lic service or public utility corporation, and is subject
to the rules of law applicable to corporations or com-
panies engaged in performing or rendering service of a
public nature.   See 1 Wyman Pub. Ser. Cor., Sec. 113.

As the gas and electric company had received and ac-
cepted from the State a corporate charter authorizing it
to engage in the business of manufacturing, generating
and selling electric current for lighting and power pur-
poses to the municipality and its inhabitants, and had
by and with the permission of the city constructed its
plant, using the streets of the city of its poles and wire
by means of which the public service of furnishing elec-
tric current to the city and its inhabitants for lighting
and power purposes was performed, for which the com-
pany was entitled under the constitution and laws of
this State to receive a reasonable compensation in re-
turn for service rendered, the company assumed the duty
imposed by implication of law to render a reasonable ade-
quate service during the time its rights and duty may
lawfully continue, and such duty may be enforced where
no adequate excuse for non-performance is appropriately
shown.   See Gas-Light Co. v. Zanesville, 47 Ohio St. 35,
23 N. E. Rep. 60.   An express contract is not essential

to establish reciprocal rights between a public service company and the public it undertakes to serve. Such rights arise by implication of law. See State *ex rel.* Ellis, v. Atlantic Coast Line R. Co. 53 Fla. 650, 44 South. Rep. 213, 13 L. R. A. (N. S.) 320.

The defense undertaken to be shown when the injunction was dissolved is in substance that the ordinances passed by the city regulating the company's service and compensation are in effect confiscatory and unduly arbitrary and burdensome to the company. This is not a sufficient reason for a discontinuance of the public service. While it is the duty of the company to observe all lawful municipal regulation, the company has a right to receive a reasonable compensation for the public service it renders to the city and its inhabitants and to the equal protection of the laws in every department of the government. If the regulations imposed by the city are in law and in fact illegal for any reason, the company has its complete and adequate remedy by appropriate proceedings; but the company being engaged in rendering a public service must continue to do so in a reasonably adequate manner until relieved of its duty by due process of law. Illegal municipal regulations are not binding; but persons and corporations cannot be permitted to arbitrarily assume to remedy an alleged wrong by refusing to render a public service voluntarily undertaken. The service to the public must be performed, and the law will upon proper proceedings enforce the right to reasonable compensation for service rendered. An ordinary action at law would not afford an adequate remedy to the public. Under the liberal rules of procedure recognized in this State the company may by cross-bill or other appropriate steps secure a determination and enforcement of

its right to reasonable compensation and to equal protection of the laws.

The municipality is a proper party in proceedings to require the public service company to continue the performance of its public service in a reasonably adequate manner for the benefit of the city and its inhabitants. Since it clearly appears that the company is actually enjoying its franchises and has undertaken to render public service, it is not essential that the particular terms and limitations under which the service is being rendered, should be alleged in proceedings to enforce a continuance of the public service actually engaged in, there being nothing to indicate that the rights of the company had expired or had been lawfully surrendered or forfeited, but inferences of a continuing right and duty being fairly deducible from the proceedings.

While the public service must be performed in a reasonably adequate manner, unlawful regulations as to rates should not be enforced. The court may on a proper showing enjoin illegal regulations of the rates to be charged, the duty of the company being to render the service undertaken, and its right being to charge a reasonable compensation for service rendered.

The decree dissolving the injunction is reversed and the cause is remanded with directions to retain the bill of complaint for the purposes of appropriate injunction orders, with leave to the defendant company by cross-bill or other procedure to test the validity of the municipal regulations of which it complains.

SHACKLEFORD, C. J., AND TAYLOR, COCKRELL AND HOCKER, J. J., concur.