108 So.2d 468 (1958)
MIAMI SHORES VILLAGE, a municipal corporation, Appellant,
v.
Faris N. COWART, Edwin L. Mason, John B. McLeod, Ralph Fossey, and Charles Hall, as members of and constituting the Board of County Commissioners of Dade County, Florida, Appellees.
Supreme Court of Florida.
December 17, 1958.
Rehearing Denied February 17, 1959.
*469 E.L. Semple, Thomas H. Anderson and Anderson & Nadeau, Miami, for appellants.
Darry A. Davis, Miami, for appellees.
George S. Okell, Miami, for Dade County League of Municipalities.
ROBERTS, Justice.
This is another in a series of cases arising in Dade County since May 21, 1957, questioning the validity of various actions taken by the Board of County Commissioners of Dade County ("the Board" hereafter) under the purported authority of the Home Rule Charter adopted on that date by the voters of Dade County. See Dade County v. Kelly, Fla. 1958, 99 So.2d 856; Chase v. Cowart, Fla. 1958, 102 So.2d 147; Dade County v. Young Democratic Club of Dade County, Fla. 1958, 104 So.2d 636. Under these decisions it is settled that the Charter and the ordinances adopted thereunder "must be consistent with and must do no violence to the provisions of Article VIII, Section 11, Florida Constitution, pursuant to which the charter is adopted." Dade County v. Dade County League of Municipalities, Fla. 1958, 104 So.2d 512, 516.
The instant suit for a declaratory decree instituted by the appellant, Miami Shores Village, against the appellees, as members of the Board, appears to have been sparked by the Board's adoption of an ordinance establishing a master plan for the control of traffic in both the unincorporated and the incorporated areas of Dade County. The ordinance, known as the Metropolitan Traffic Code, expressly nullified and superseded the traffic ordinances of the municipalities in Dade County and provided that violations of the Code should be tried only in the Metropolitan Court of Dade County.
The issues made and decided in the instant suit were not, however, limited to the validity vel non of the Metropolitan Traffic Code. In addition to upholding the validity of the Code the Chancellor found and declared that the Dade County Home Rule Charter and county ordinances adopted thereunder "shall in cases of conflict supersede all municipal charters and city ordinances, except in those instances where the charter of Dade County specifically provides otherwise." The Chancellor also found and declared that § 1.01A(18) of the Home Rule Charter, providing the methods by which a municipality may transfer to the Board a municipal service or function, "imposes no limitation or restriction upon the [Board] in the exercise of any of the powers enumerated in Section 1.01 of the Charter." It is this decree that we review on this appeal.
*470 Pertinent here are the following provisions of the so-called Home Rule Amendment to the Florida Constitution, § 11 of Art. VIII, F.S.A., adopted at the 1956 general election:
"Section 11(1). The electors of Dade County, Florida, are granted power to adopt, revise, and amend from time to time a home rule charter of government for Dade County, Florida, under which the Board of County Commissioners of Dade County shall be the governing body. This charter:
* * * * * *
"(b) May grant full power and authority to the Board of County Commissioners of Dade County to pass ordinances relating to the affairs, property and government of Dade County and provide suitable penalties for the violation thereof; to levy and collect such taxes as may be authorized by general law and no other taxes, and to do everything necessary to carry on a central metropolitan government in Dade County.

* * * * * *
"(d) May provide a method by which any and all of the functions or powers of any municipal corporation or other governmental unit in Dade County may be transferred to the Board of County Commissioners of Dade County.
* * * * * *
"(g) Shall provide a method by which each municipal corporation in Dade County shall have the power to make, amend or repeal its own charter. Upon adoption of this home rule charter by the electors this method shall be exclusive and the Legislature shall have no power to amend or repeal the charter of any municipal corporation in Dade County." (All emphasis above is supplied, and paragraph designations are as in Florida Statutes 1957, F.S.A.)
In Gray v. Golden, Fla. 1956, 89 So.2d 785, 791, this court declined to sustain a decree of the lower court holding, inter alia, that the provisions of the Resolution proposing the Home Rule Amendment were so inconsistent, conflicting and contradictory as to invalidate the entire proposed amendment. In so doing this court said: "Properly construed we think the proposed amendment defines a comprehensive plan for home rule in Dade County; we think its apparent conflicts may be reconciled within the confines of the proposed amendment."
On this appeal it is contended on behalf of the appellant Village that the Home Rule Charter, as interpreted by the Board and by the Chancellor in the decree upholding such interpretation, instead of "reconciling" such inconsistencies, has perpetuated them. It is suggested by amicus curiae, the Dade County League of Municipalities, that if full force and effect is given to § 1.01A(18) of the Charter, the apparent inconsistencies are resolved and a workable plan of metropolitan government emerges which, at the same time, preserves to the municipalities in the county the municipal autonomy guaranteed by § 11(1) (g) of the Home Rule Amendment, quoted above.
The appellees contend that the Home Rule Amendment, and the Charter adopted pursuant thereto by the electors of Dade County, were designed to and did establish a system of metropolitan government described by the Chancellor in his decree as follows:
"The system of local government in Dade County has been termed by experts in political science as the `federated plan' of metropolitan government. This concept of local government recognizes the fact that virtually all activities of local government are inter-related, and contemplates a division of governmental functions between a central metropolitan government and the existing municipalities within the territorial area, and is designed to provide a method for accomplishment of community *471 problems by means of concerted cooperation between the two levels of local government. The type of metropolitan government adopted for Dade County allocated to the municipalities specific rights of self determination and home rule in municipal affairs, and reserved to the county government the power to pass ordinances or county-wide laws relating to the affairs, property and government throughout the county, and all other powers necessary to carry on a central metropolitan government in the territorial area of Dade County. It recognizes the most vital single problem facing Dade County; that is, the urgent need for the establishment of an area-wide framework for effective local government."
When interpreted in the light of the purpose sought to be accomplished, we find no conflicts or inconsistencies among the several provisions of the Home Rule Amendment quoted above, nor in the Home Rule Charter adopted by the electors of Dade County pursuant to such constitutional authority. The Home Rule Amendment, § 11(1) (b), supra, authorized the Charter to "grant full power and authority to the Board of County Commissioners of Dade County to pass ordinances relating to the affairs, property and government of Dade County * * * and to do everything necessary to carry on a central metropolitan government in Dade County." This means that the Charter could authorize the Board to regulate on a county-wide basis according to a uniform plan those municipal services or functions that are susceptible to, and could be most effectively carried on under, a regulatory plan applicable to the entire metropolitan area  or it means nothing insofar as the authority to "carry on a central metropolitan government in Dade County" is concerned; and we must assume that every sentence of a constitution is designed to have some effect. See In re Advisory Opinion to the Governor, Fla. 1957, 96 So.2d 904, 905.
When § 11(1) (b) is so interpreted, there is no inconsistency among the three constitutional provisions quoted above. Thus, the provision of § 11(1) (d), supra, authorizing the Charter to provide for the transfer to the Board by a municipality of "any and all" of its municipal functions or powers, must have been included in the Home Rule Amendment for the purpose of authorizing the municipalities to transfer to the Board, and the Board to perform, (1) purely local municipal functions or powers not susceptible to regulation on a county-wide basis under a uniform plan, or (2) other municipal services that are susceptible to and may have been regulated on a county-wide basis, but which could be provided as well at the local level by the local administrative body as by the Board on a county-wide basis, e.g., garbage collection.
Completing the "comprehensive plan for home rule in Dade County," Gray v. Golden, supra [and subject, of course, to the express limitations of § 11(5) and (6)], § 11(1) (g) guarantees to the municipalities complete autonomy  freedom from interference by either the Legislature or the Board  insofar as their purely local municipal functions or powers are concerned. The question of what is or is not a purely local function or power of a municipality is a mixed question of law and fact to be determined judicially if, as and when the authority of the Board to legislate concerning a particular municipal function or power is controverted.
In summary, then, we construe the above-quoted provisions of the Home Rule Amendment as requiring the Charter to provide for municipal autonomy as to the purely local functions or powers of the municipalities in Dade County; and as authorizing regulation and control by the Board on a county-wide basis of those municipal functions and services that are susceptible to, and could be most effectively carried on under, a uniform plan of regulation applicable to the county as a whole.
*472 The Home Rule Charter appears, in general, to have been carefully drawn to carry out the intent and purpose of the Home Rule Amendment. The particular regulation here brought into question  an ordinance establishing uniformity of traffic control and enforcement throughout the metropolitan area  is specifically authorized by § 1.01A(1) of the Home Rule Charter and is in accord with the intent and purpose of the constitutional authority granted by the Home Rule Amendment.
We have not overlooked the suggestion here made by amicus curiae with respect to the impact of § 1.01A of the Charter on the respective powers of the Board and the municipalities in Dade County; this suggestion is answered by what has been said before in this opinion.
The decree of the Chancellor here reviewed, holding that the Home Rule Charter and county ordinances adopted thereunder "shall in cases of conflict supersede all municipal charters and city ordinances, except in those instances where the charter of Dade County specifically provides otherwise," and that § 1.01A(18) of the Charter "imposes no limitation or restriction upon the [Board] in the exercise of any of the powers enumerated in Section 1.01 of the Charter", is correct if it be assumed that the Charter power sought to be exercised by the Board is consistent with and does no violence to the provisions of the Home Rule Amendment as discussed and defined herein. As so limited, the decree of the Chancellor should be and it is hereby
Affirmed.
TERRELL, C.J., and HOBSON, J., concur.
THOMAS, J., concurs in part and dissents in part.
STURGIS, Associate Judge, concurs specially.
STURGIS, WALLACE E., Associate Judge (specially concurring).
I fully concur in the reasoning and conclusions so ably expressed by Mr. Justice Roberts and, mindful of the many problems attending the transition from the comparatively autonomous type of government that was enjoyed  or suffered  by the numerous independent municipalities of Dade County prior to the adoption of the Home Rule Charter to the type of central municipal government established under the Charter, I deem it opportune to make the following observations.
Section 11(1) (d), Art. VIII, Constitution of Florida, F.S.A., provides that a charter for home rule in Dade County adopted pursuant thereto
"May provide a method by which any and all of the functions or powers of any municipal corporation or other governmental unit in Dade County may be transferred to the Board of County Commissioners of Dade County."
Section 1.01A of the Charter designates the Board of County Commissioners as the governing body with specific powers in respect to 24 areas of the central metropolitan government enumerated therein. At no point in the Charter, other than subparagraph 18 of the mentioned Section 1.01A, which has no bearing on this case, is it made necessary that the consent of the municipalities be obtained as a prerequisite to the exercise by the central metropolitan government of the powers thus enumerated. It follows, under well-recognized principles of executive, legislative, and administrative procedures, that the method envisioned by the Charter for the taking over by the central municipal government of the functions so enumerated is simply the action of the governing body of the central municipal government effectuating that purpose in a lawful manner, and that such does not contemplate consent of the municipalities.
*473 The initial paragraph of the Home Rule Charter is sweeping in its implication that a strong central government in Dade County is desirable. It is the writer's opinion that the 24 subsections of Section 1.01A of the Charter should be liberally construed to the end that the central government may readily exercise the powers therein enumerated, and that it should otherwise be strictly construed against the assumption of additional powers. It is difficult to imagine a field in which a central metropolitan government could more effectively function than in that of removing the confusion, inequalities, and inequities resulting from a multiplicity of independent municipal ordinances governing the control of traffic and parking in highly congested and contiguous metropolitan areas.
There is no true comparison between the type of central metropolitan government established in Dade County and that of the state government. Not only are their problems entirely different, but the central municipal government finds its inception in, is a creature of, and always remains subordinate to the sovereign power of the state.
The concept of home rule should be cherished and nurtured. However, the conclusion is inescapable that over-purification of this concept would establish a rule of laissez faire rather than of reason, would promote the anarchy of untrammeled individuality.
THOMAS, Justice (concurring in part and dissenting in part).
I agree with most of the opinion but I do not agree with the application to the present problem of the principles announced, and that traffic control should be wholly taken from the municipalities.
From the preamble of the Metropolitan Charter it appears that both metropolitan government and control by municipalities over their local affairs were intended to be preserved. It follows:
"We, the people of this County, in order to secure for ourselves the benefits and responsibilities of home rule, to create a metropolitan government to serve our present and future needs, and to endow our municipalities with the rights of self determination in their local affairs, do under God adopt this home rule Charter." (Emphasis supplied)
I think control of traffic is a problem for the municipalities except possibly traffic on arterial roads under Section 1.01A(1) which provides that the Board of County Commissioners shall have power to regulate traffic on "arterial roads."