### DADE COUNTY v. CITY OF MIAMI BEACH, et al.

No. 59 C 6606.

Circuit Court, Dade County.

June 27, 1960.

146

Darrey A. Davis, County Attorney, for plaintiff.

Joseph A. Wanick, Miami Beach City Attorney, for City of Miami Beach and Village of El Portal.

PAT CANNON, Circuit Judge.

This is another of the series of suits involving the validity of the traffic ordinance of Dade County (ordinance no. 57-12) and the metropolitan court ordinance (ordinance no. 57-13). Although the validity of these county ordinances has been sustained and upheld in a number of decisions rendered by the Supreme Court of Florida, the District Court of Appeal, Third District, and the Circuit Court of Dade County, the City of Miami Beach and the Village of El Portal contend in this litigation that the provisions of these ordinances are not binding upon them and that none of the previous court decisions are applicable or binding. These contentions are predicated upon the premise that the traffic ordinance and metropolitan court ordinance constitute

an unlawful exercise of legislative power by the county commission infringing upon the supremacy of the constitution and the general laws of Florida.

There are twenty-six municipalities in Dade County. Each and all of them observe and enforce the traffic ordinance of Dade County, except the City of Miami Beach and the Village of El Portal. The traffic ordinance of Dade County, which is a direct regulatory plan designed to establish uniformity of traffic control and enforcement throughout all of metropolitan Dade County, operates uniformly on a county-wide basis, except within the municipal boundaries of Miami Beach and El Portal. Within the territorial areas of these two municipalities, municipal traffic ordinances adopted after the institution of this suit are enforced and all violations thereof are tried in the municipal courts of such municipalities.

Since the effective date of the traffic ordinance of Dade County and the metropolitan court ordinance, the circuit court of Dade County, on innumerable occasions, in municipal appeals, certiorari, habeas corpus and prohibition proceedings brought by citizens charged with violations of municipal traffic ordinances, has uniformly and invariably held all municipal traffic ordinances are superseded by the traffic ordinance of Dade County; that the metropolitan court has exclusive original jurisdiction to try violations thereof, and that municipal courts are without jurisdiction to try traffic offenses. In State ex rel. Clure H. Mosher v. City of Miami Beach, Fla. App. 1960, decided May 23, 1960, the petitioner was arrested and charged with violations of the Miami Beach traffic ordinance and required to post bond in the amount of $275. He filed prohibition proceedings challenging the jurisdiction of the municipal court to try him for such alleged traffic offenses. The court granted a writ of prohibition holding that the municipal court lacked jurisdiction and prohibiting the judges of the municipal court of Miami Beach from taking any further action or maintaining jurisdiction in respect to such matter, "other than to transfer the cause and docket to the Metropolitan Court, Dade County, Florida". Rather than transfer this serious alleged traffic offense to the metropolitan court in accordance with the provisions of the Dade County traffic ordinance and metropolitan court ordinance, Miami Beach dropped the charges. The attorney and legal advisor for the City of Miami Beach and the Village of El Portal stated in open court (tr. 34) — "It is upon my advice that whenever those suits for prohibition against the municipal court of Miami Beach or Village of El Portal are filed that we do not transfer the alleged traffic violator to the jurisdiction of the metropolitan court for

the reason that if we so did . . . we have waived our right to challenge the validity of the metro traffic ordinance . . . and that being the case, it is obvious that a defendant charged with an offense on Miami Beach knows, by virtue of my position, that if he gets a writ of prohibition that the City of Miami Beach will not transfer the case to the metropolitan court . . .".

It is amazing and curious public policy on the part of municipal governments that will permit and condone turning loose traffic offenders (including those charged with driving while intoxicated), rather than recognize any authority of the county government to provide uniform traffic regulations on a county-wide basis. As Mr. Justice Sturgis said in Miami Shores Village v. Cowart, Fla. 1958, 108 So.2d 468 — "It is difficult to imagine a field in which a central metropolitan government could more effectively function than in that of removing the confusion, inequalities, and inequities resulting from a multiplicity of independent municipal ordinances governing the control of traffic and parking in highly congested and contiguous metropolitan areas".

In a metropolitan area experiencing explosive population increases, confronted with more motor vehicles per capita than anywhere else in the nation, and where increasing traffic fatalities and mounting automobile insurance costs pose problems of serious concern, the philosophy of stubborn and continuing opposition to a county legislative program designed to provide uniformity of traffic control and enforcement throughout this metropolitan area, because such program might infringe upon and detract from the autonomy of traditional municipal sovereignty, comes with ill grace and exerts little persuasive force upon the exercise of discretionary powers of this court. However, these defendant municipalities are entitled to receive a careful and impartial judicial review, consideration and determination of their contentions that, as a matter of law, the traffic ordinance of Dade County and the metropolitan court ordinance are invalid and unconstitutional.

The traffic ordinance of Dade County was enacted on September 20, 1957, and the effective date thereof was ultimately fixed as March 1, 1958. The metropolitan court ordinance was enacted September 25, 1957, effective on October 5, 1957. The validity and constitutionality of such ordinances were challenged and determined by this court in Miami Shores Village v. County Commissioners, 12 Fla. Supp. 168; on appeal the Supreme Court affirmed such circuit court decree in Miami Shores Village v. Cowart, Fla. 1958, 108 So.2d 468.

To the end that the provisions of such county ordinances might be effectuated and enforced throughout Dade County, in both the incorporated and unincorporated areas, the county commission invited all municipalities to a meeting on May 18, 1959, to discuss and arrive at mutually satisfactory procedures for making the transition to uniformity in traffic control and enforcement on a county-wide basis (plaintiff's exhibit "C"). Thereafter, all municipalities, except Miami Beach, El Portal, Miami Springs and Coral Gables, conformed to and recognized the validity of such regulatory ordinances. The county commission, by resolution no. 3485, adopted June 30, 1959, directed the county attorney to take appropriate legal action for and on behalf of Dade County to compel such municipalities to adhere to, comply with and recognize the validity and lawful force and effect of the traffic ordinance and metropolitan court ordinance.

This suit was instituted July 13, 1959, on behalf of Dade County by the filing of a verified complaint seeking a declaratory decree adjudicating that the traffic ordinance of Dade County superseded and nullified all municipal traffic regulations and that the traffic ordinances of the City of Miami Beach, Village of El Portal, Town of Miami Springs and City of Coral Gables were null and void and of no force and effect; and praying for preliminary and permanent injunctive relief enjoining and restraining the defendant municipalities from further causing their respective police officers to enforce their municipal traffic ordinances, and to make arrests for violations of such municipal traffic regulations, and from trying such traffic offenses in their municipal courts; and requiring the defendant municipalities to enforce and comply with the controlling county ordinances governing the control of traffic and trial of traffic offenses.

Subsequent to the commencement of this litigation, the City of Coral Gables and the Town of Miami Springs have commenced enforcing and complying with such county ordinances. This cause has become moot as to such municipalities, and they are dismissed as parties defendant herein. The only remaining defendants are the City of Miami Beach and the Village of El Portal.

On July 21, 1959, after due notice and hearing, the court granted the preliminary injunctive relief prayed for in plaintiff's verified complaint in accordance with the principles of law enunciated in Sax Enterprises v. Hotel Employees Union, Fla. 1955, 80 So. 2d 602; and Boca Raton Club v. Hotel Employees Union, Fla. 1955, 80 So. 2d 680, by granting a preliminary injunctive order enjoining the defendant municipalities from further enforcing their municipal traffic regulations and ordering them to recognize and conform to the county traffic ordinance.

The City of Miami Beach and Village of El Portal took an interlocutory appeal to the Supreme Court of Florida from the preliminary injunctive order and stayed the operation and effect thereof. The Supreme Court transferred jurisdiction of such interlocutory appeal to the District Court of Appeal, Third District, and the District Court of Appeal, on October 16, 1959, entered the following order (plaintiff's exhibit "G") —

"Pursuant to rule 4.2f, Florida Appellate Rules, the court does hereby reserve ruling on the above interlocutory appeal until final disposition of the cause by the trial court.

"The effect of this ruling is to leave this interlocutory appeal pending, and to defer decision until after entry of a final decree in the cause. Upon filing in this court of a certified copy of a final decree in the cause, this appeal will be set for hearing or otherwise disposed of by the court."

Pursuant to order entered on March 24, 1960, this cause came on for trial and final hearing before the court upon the issues made by the complaint and the respective answers filed by the City of Miami Beach and Village of El Portal, on June 10, 1960. The court has carefully reviewed and considered the pleadings, the testimony adduced and the evidentiary exhibits filed at the preliminary hearing on July 20, 1959, and the final hearing, and has heard and considered extensive arguments of counsel. Counsel were also afforded the opportunity to submit briefs. No material factual issues are involved in this cause. The questions presented for determination involve the validity and constitutionality of the traffic ordinance of Dade County and the metropolitan court ordinance.

The constitutionality and validity of the county ordinances here involved have been determined and resolved by the Supreme Court of Florida in Miami Shores Village v. Cowart, Fla. 1958, 108 So. 2d 468. The controlling principles of law established in the Miami Shores suit have been cited with approval and followed in City of Miami v. Keton, Fla. 1959, 115 So. 2d 547; City of Miami Beach v. Cowart, Fla. 1959, 116 So. 2d 432; and in City of Miami v. Pedro Benitez, Fla. App. 1959, 116 So. 2d 463.

The Dade County home rule amendment to the Florida constitution (section 11 of article VIII) authorized the home rule charter of government for Dade County to grant full power and authority to the board of county commissioners, as the legislative and governing body of the county, to pass ordinances relating to the affairs, property and government of Dade County, and to do everything necessary to carry on a central metropolitan gov-

ernment in Dade County. This grant of power contained in the constitutional amendment was sufficient to constitute express authorization to the county commission to enact the traffic ordinance of Dade County (according to the Supreme Court). Specifically, the Supreme Court said in the Miami Shores suit —

> The Home Rule Amendment . . . authorized the Charter to "grant full power and authority to the Board of County Commissioners of Dade County to pass ordinances relating to the affairs, property and government of Dade County and do everything necessary to carry on a central metropolitan government in Dade County". This means that the Charter could authorize the Board to regulate on a county-wide basis according to a uniform plan those municipal services or functions that are susceptible to, and could be most effectively carried on under, a regulatory plan applicable to the entire metropolitan area—or it means nothing insofar as the authority to "carry on a metropolitan government in Dade County" is concerned.
>
> . . . The particular regulation here brought into question—an ordinance establishing uniformity of traffic control and enforcement throughout the metropolitan area—is specifically authorized by Section 1.01 A (1) of the Home Rule Charter and is in accord with the intent and purpose of the constitutional authority granted by the Home Rule Amendment.

The grant of constitutional power to establish the metropolitan court and vest it with exclusive original jurisdiction to try all violations of the traffic ordinance is specifically spelled out in section 11 (1) (f) of article VIII of the Florida constitution, as follows — " . . . such charter may create new courts and judges and clerks thereof with jurisdiction to try all offenses against ordinances passed by the Board of County Commissioners of Dade County and none of the other courts provided for by this Constitution or by general law shall have original jurisdiction to try such offenses. . ."

Thus, it is plain that the board of county commissioners was by constitutional grant of power carried forward into the charter, expressly authorized to enact traffic regulations that superseded and nullified all municipal traffic ordinances and to establish the metropolitan court with exclusive jurisdiction to try traffic offenses. In City of Miami v. Keton, Fla. 1959, 115 So. 2d 547, the Supreme Court, speaking through Mr. Justice Terrell, said —

> It is our view that this question is answered contrary to the contention of appellant in Miami Shores Village v. Cowart, Fla. 1958, 108 So.2d 468. It further appears from all that has been said that the ordinances in question were within the power of the Board of County Commissioners to enact, that as to traffic regulations said ordinances superseded all municipal charters and ordinances in conflict therewith and divested municipal courts in Dade County of all jurisdiction to entertain, adjudicate or punish those charged with traffic violations as of March 1, 1958.

When the electors of Dade County adopted the home rule charter on May 21, 1957, the authority of the legislature in the affairs of local government of Dade County ceased to exist. Thereafter, the legislature may lawfully exercise any legislative power in respect to the affairs of local government in Dade County only through passage of general acts applicable to Dade County and any one or more counties or by general acts applicable to a municipality in Dade County and any other one or more municipalities in the state. Chase v. Cowart, Fla. 1958, 102 So.2d 147.

The defendant municipalities assert that by enacting ordinances after the institution of this suit adopting by reference the "Florida Model Traffic Ordinance" set forth in chapter 186, Florida Statutes, such municipal traffic ordinances superseded and nullified the traffic ordinance of Dade County, because chapter 186 is a general law and that general laws are supreme and supersede any county ordinances in conflict with the provisions of any general laws. This contention overlooks the fact that chapter 186, Florida Statutes, is merely an enabling act providing that a "municipality may by ordinance adopt, by reference, any or all of the provisions of the Florida Model Traffic Ordinance without setting forth such provisions in full". This act has no effect whatsoever until and unless a municipality takes affirmative action to adopt such model traffic ordinance. The power of any municipality in Dade County to utilize this traffic ordinance is limited by the provisions of the home rule charter prohibiting them from passing ordinances in conflict with the charter or any county ordinances enacted thereunder.

More significant, however, this contention overlooks the fact that the constitutional prohibition against the enactment of county ordinances which conflict with the provisions of general laws is subject to an exception. The home rule charter and ordinances enacted under and pursuant to the charter may conflict with, nullify or supersede constitutional provisions and general laws *where expressly authorized* by section 11 of article VIII of the Florida constitution.

In Dade County v. Young Democratic Club of Dade County, Fla. 1958, 104 So. 2d 636, the Supreme Court sustained and upheld the validity of charter provisions relating to the method of electing county commissioners in Dade County, which provisions are in direct conflict with constitutional provisions and general laws. The Court said —

It follows that in the exercise of legislative power granted by the Charter, the electors of Dade County were prohibited from infringing on the supremacy of the Florida Constitution and the general laws of Florida "*except as expressly authorized*" by specific grants of power given

them by Section 11, Article VIII of the Constitution, relating to home rule in local affairs for Dade County. The "specific grants" involved here are contained in paragraphs (1) and (a) above.

\* \* \*

In Chase v. Cowart we emphasized that subsection (5) of Section 11, Article VIII of the Constitution provides that the Charter "shall not conflict with any provision of this Constitution nor of [with] any applicable general laws now applying to Dade County and any other one or more counties of the State of Florida *except as expressly authorized in this section* \* \* \*." In so holding we said that the preceding underscored words related to those powers which were specifically granted to the electors of Dade County by the various subsections of subsection (1), Section 11, Article VIII of the Constitution.

The Court has held and determined that section 11(1)(b) of article VIII of the constitution granting full power and authority to the board of county commissioners to pass ordinances relating to the affairs, property and government of Dade County, and do everything necessary to carry on a central metropolitan government in Dade County, constitutes a grant of power expressly authorizing the enactment of the traffic ordinance of Dade County, Miami Shores Village v. Cowart, supra. And the Court has held that the traffic ordinance supersedes and nullifies all municipal traffic ordinances. City of Miami v. Keton, supra.

The traffic ordinance of Dade County provides that — "It shall be the duty of all Municipal Police Officers to enforce all provisions of this Ordinance and of the State Vehicle laws applicable to street and highway traffic within the municipalities wherein they are employed. Arrests shall be made for violators thereof, and such Municipal Police Officers shall prosecute the same only in the Metropolitan Court." Thus, the enforcement of uniform traffic regulations within municipal boundaries has been determined and declared to constitute a purely local function. This is a valid exercise of legislative powers within the meaning and intent of the Miami Shores Village decision, and constitutes a direct regulatory plan applicable uniformly to all municipalities in Dade County. The metropolitan court ordinance provides that all fines and forfeitures collected from traffic violations committed within municipalities shall be paid to the municipalities less their proportionate shares of the expense entailed for operation of the metropolitan court. The amount of fine and forfeiture funds received by municipalities, therefore, is dependent upon the degree of effectiveness of enforcement of the uniform traffic regulations. Lax and inefficient enforcement of the traffic regulations will necessarily decrease the amount of fines and forfeitures. Moreover, it will not achieve any reduction in traffic fatalities.

Other contentions made on behalf of the defendant municipalities have been carefully considered and found to be without merit.

The court finds that the equities of this cause are with the plaintiff, Dade County, Florida, and that the plaintiff is entitled to the relief prayed for in its verified complaint.

Accordingly, it is hereby ordered, adjudged and decreed —

That Dade County ordinance no. 57-12, adopting a master plan for the control of traffic, establishing regulations and setting penalties for violations thereof, known as "The Traffic Ordinance of Dade County, Florida", sometimes referred to as the "Metropolitan Traffic Code", was lawfully enacted under and pursuant to, and in accordance with, the home rule charter of government for Dade County, and is applicable in all the unincorporated and incorporated areas of Dade County and supersedes and nullifies all municipal traffic ordinances, resolutions, and codes of the several municipalities in Dade County.

That Dade County ordinance no. 57-13, establishing the metropolitan court of Dade County and vesting it with exclusive original jurisdiction to try all cases for violations of the traffic ordinance of Dade County, also known as the metropolitan traffic code (ordinance no. 57-12), was lawfully enacted under and pursuant to, and in accordance with, the home rule charter and supersedes and nullifies all municipal charters and ordinances in conflict therewith.

That all the traffic ordinances and traffic regulations of the defendants, City of Miami Beach and Village of El Portal, have been lawfully superseded and nullified by the traffic ordinance of Dade County, and all such municipal traffic ordinances are invalid and of no lawful force and effect.

That ordinance no. 1353 of the City of Miami Beach, known as the traffic ordinance of Miami Beach, adopted on July 15, 1959, be and it is hereby declared invalid, null and void, and of no force and effect.

That ordinance no. 97 of the Village of El Portal, known as the traffic ordinance of the Village of El Portal, adopted on August 3, 1959, be and it is hereby declared invalid, null and void, and of no force and effect.

That the defendants, City of Miami Beach and Village of El Portal, and their respective officials, officers, representatives, appointees, agents, servants and employees, are hereby enjoined and restrained from further enforcing any municipal traffic ordinances or regulations, and the police officers of such municipalities are hereby enjoined and restrained from making any further arrests for alleged violations of such municipal traffic ordinances and from prosecuting any further violations of such municipal traffic ordinances in the municipal courts; and the municipal courts of the said defendant municipalities and the several judges thereof are enjoined and restrained from trying any further traffic cases involving violations of the traffic ordinance of such municipalities.

That the defendants, City of Miami Beach and Village of El Portal, and their respective officials, officers, representatives, appointees, agents, servants, employees and police officers, are hereby required to enforce the provisions of the traffic ordinance of Dade County, within the boundaries of their respective municipalities, and to recognize, conform to, observe and abide by the traffic ordinance of Dade County.

The city council of the City of Miami Beach, the city manager and the chief of police, and the village council of the Village of El Portal, the village manager and the chief of police are hereby ordered and required to take such action as may be necessary to effectuate and carry into effect the provisions and requirements of this final decree, and the traffic ordinance of Dade County, and the metropolitan court ordinance.

That this cause be and it is hereby dismissed as to the City of Coral Gables, and the Town of Miami Springs, and said municipalities are hereby stricken and removed from the title of this cause and all pleadings herein.

Subject to approval and concurrence by the district court of appeal, third district (wherein jurisdiction of this cause is vested on interlocutory appeal), the preliminary injunctive order entered herein on July 21, 1959, and recorded in chancery order book 1402, at page 659, is vacated and superseded by this final decree.

The clerk of this court is hereby directed to transmit a duly certified copy of this final decree to the clerk of the district court of appeal, third district, for information, consideration and appropriate action, in accordance with the order of such district court of appeal entered on October 16, 1959.