348 So.2d 1174 (1977)
CITY OF HIALEAH GARDENS et al., Appellants,
v.
DADE COUNTY et al., Appellees.
No. 76-946.
District Court of Appeal of Florida, Third District.
July 12, 1977.
Rehearing Denied September 9, 1977.
*1176 Warren S. Wepman, Horton, Perse & Ginsberg and Mallory H. Horton, Miami, Neil Flaxman, South Miami, for appellants.
Steel, Hector & Davis and Darrey A. Davis, Coral Gables, Stuart L. Simon, County Atty., Miami, Lewis I. Horwitz, Bay Harbor Island, for appellees.
George F. Knox, Jr., City Atty. and Eugene Steinfeld, Asst. City Atty., for City of Miami as amicus curiae.
Before HENDRY, C.J., and BARKDULL and NATHAN, JJ.
PER CURIAM.
This appeal stems from the dismissal of the City of Hialeah Gardens' suit to enjoin Metropolitan Dade County from receiving any part of the revenue collected by Florida Power and Light Company (FP&L) from inhabitants of Hialeah Gardens. Dade County has cross-appealed from the trial court's modification of its final order after a hearing on motions to intervene and for rehearing which were brought by the Village of Virginia Gardens.
In 1960, the Board of County Commissioners of Dade County passed an ordinance granting FP&L a thirty year non-exclusive franchise to provide electricity to the residents of Dade County. The ordinance, No. 60-16, in pertinent part reads as follows:
"Section 1. That there is hereby granted to Florida Power & Light Company ... the non-exclusive right, privilege or franchise to construct, maintain and operate in, under, upon, over and across the present and future streets, alleys, bridges, easements and other public places in the unincorporated and incorporated areas of Dade County, Florida ... for the period of thirty years from the date of acceptance hereof . . for the purpose of supplying electricity to [Dade County], and its successors, the inhabitants thereof, and persons and corporations beyond the limits thereof, subject to all existing municipal franchises."
Other sections of the ordinance recite standards regarding the placement, construction and maintenance of transmission facilities and provide for the payment of a franchise fee to Dade County.
The ordinance was passed by a more than two-thirds vote of the members of the Board of County Commissioners and approved by a majority of the qualified electors of Dade County in accordance with Section 1.01(A)(14)(a) of the Dade County *1177 Home Rule Charter. Section 1.01 delineates the powers of the Board of County Commissioners, and Subsection 14 in particular deals with the power to grant franchises:
"SECTION 1.01. POWERS
A. The Board of County Commissioners shall be the legislative and the governing body of the county and shall have the power to carry on a central metropolitan government. This power shall include but shall not be restricted to the power to:
* * * * * *
14. Regulate, control, take over, and grant franchises to, or itself operate gas, light, power, telephone, and other utilities, sanitary and sewage collection and disposal systems, water supply, treatment, and service systems, and public transportation systems ..."
Hialeah Gardens initially brought suit against FP&L claiming that FP&L had since 1960 been wrongfully paying to Dade County part of the revenue derived from the sale of electricity to inhabitants of Hialeah Gardens. The City therefore sought to have FP&L enjoined from making any further payments to Dade County. In its subsequent amended complaint, Hialeah Gardens included Dade County as a party defendant. The original allegations and requests for relief were restated but in addition, a temporary injunction was sought barring the County from exercising any rights under its franchise agreement with FP&L or from interfering in any way with Hialeah Gardens' attempts to negotiate its own franchise with FP&L. This latter request was premised upon the contention that the County had exceeded its authority in granting the county-wide franchise.
FP&L moved to dismiss the amended complaint, while Dade County filed a counterclaim against Hialeah Gardens and a crossclaim against FP&L seeking a declaration of its rights, privileges and powers under the franchise agreement. Specifically, the County alleged that Ordinance No. 60-16 was preemptive, barring franchise contracts between FP&L and those municipalities in Dade County which had not established such relationships prior to the effective date of the ordinance.
The trial judge ultimately dismissed Hialeah Gardens' complaint against both the County and FP&L. The court held that the Metro charter authorized the County to grant county-wide franchises, subject to the conditions for approval mandated by Charter Section 1.01(A)(14)(a), which conditions had been performed. The court further ruled that Ordinance No. 60-16 was preemptive in nature and that FP&L was consequently barred from entering into franchise agreements with Dade County municipalities subsequent to May 24, 1960, the date that the ordinance went into effect. The court's order stated the discerned prohibition applied not only to those municipalities which had no contractual relationships with FP&L on May 24, 1960, but also to those whose contracts would expire between May 24, 1960, and May 24, 1990.
Hialeah Gardens' petition for rehearing was denied. However, a second petition for rehearing was filed by the Village of Virginia Gardens along with a motion to intervene as a party plaintiff for the purpose of presenting the petition for rehearing and participating in any appeal. Virginia Gardens had a franchise agreement with FP&L which was entered into prior to May 24, 1960, but which would expire before 1990. Accordingly, the Village would be directly affected by the court's order, although neither it nor any other municipality with a pre-1960 franchise had been joined as parties to the suit. Virginia Gardens therefore argued that the trial court had erred in entering a ruling adjudicating the rights of municipalities in this class and requested that references to existing franchise agreements be deleted from the order.
After a hearing, the trial court granted Virginia Gardens' motion to intervene. In addition, the court modified its final order:
"(a) The penultimate sentence in the final paragraph of the order reading as set out below is stricken:
* * * * * *

*1178 `It appears to this Court that the language of the aforesaid Section 1 of County Ordinance No. 60-16 is preemptive in nature and bars the Florida Power & Light Company from entering into subsequent franchise agreements with those municipalities in Dade County (a) with which it had no contractual relationships on May 24, 1960, or (b) whose municipal franchises with the Florida Power & Light Company would expire between May 24, 1960 and May 24, 1990.'
(b) It is replaced by the following two sentences:
`It appears to the Court that the language of the aforesaid Section 1 of County Ordinance No. 60-16 is preemptive in nature and bars the Florida Power & Light Company from entering into subsequent franchise agreements with those municipalities in Dade County with which it had no contractual relationships on May 24, 1960. The Court feels and states as a matter of dictum without specifically so ruling that the language of the aforesaid Section 1 of County Ordinance No. 60-16 appears to bar the Florida Power & Light Company from entering into renewal franchise agreements with those municipalities in Dade County whose municipal franchises with the Florida Power & Light Company expire between May 24, 1960 and May 24, 1990.'"
From the final order and subsequent modification thereof, the instant appeal and cross-appeal ensued.
In attempting to determine whether Dade County has preempted the right of Hialeah Gardens to award a franchise to FP&L, our inquiries have invariably focused upon the advisability or perhaps the necessity for uniform regulation of electric utilities. In Miami Shores Village v. Cowart, 108 So.2d 468, 471 (Fla. 1958), the Supreme Court of Florida ruled that the Home Rule Amendment, Article VIII, Section 11, Florida Constitution (1956), required Dade County through its Home Rule Charter "to provide for municipal autonomy as to the purely local functions or powers of the municipalities in Dade County." At the same time, the County was authorized to regulate and control "on a county-wide basis ... those municipal functions and services that are susceptible to, and could be most effectively carried on under, a uniform plan of regulation applicable to the county as a whole." Cowart, 108 So.2d at 471. Utilizing this standard, the Court upheld an ordinance establishing uniform traffic control and enforcement throughout the metropolitan area as being "in accord with the intent and purpose of the constitutional authority granted by the Home Rule Amendment." Id. at 472.
The Cowart decision was later relied upon by the Supreme Court in State v. Dade County, 142 So.2d 79 (Fla. 1962), wherein the Court sustained the purchase and operation of a county-wide transit system:
"An adequate public transportation system, according to the record in this case and as a matter of common knowledge, is necessary and essential in the development, improvement and growth of great metropolitan areas such as that embraced within the limits of the County. One of the obvious purposes of metropolitan government and a principle inherently embodied in the constitutional amendment and the Home Rule Charter is the development of public services and utilities having county-wide application and uniform operation. We have therefore held that county ordinances adopted under the amendment and charter supersede municipal charters and ordinances when in conflict therewith except where the charter specifically provides otherwise." (Footnote omitted.) 142 So.2d at 85.
Similarly, in City of Coral Gables v. Burgin, 143 So.2d 859 (Fla. 1962), the Supreme Court cited Cowart in holding that a Dade County ordinance governing the licensing of plumbers superseded a Coral Gables ordinance involving the same matter. There the Court found that the regulation of the plumbing trade was not something which was "so peculiar to [Coral Gables] as to *1179 justify denominating it purely local." Id. at 861.
Turning to the case before us, it certainly cannot be said that the regulation of electric utilities is a purely local matter. To the contrary, electric companies by their very nature are public service corporations, subject to lawful governmental regulations to enforce the performance of their duties to the public. City of Gainesville v. Gainesville Gas & Electric Power Co., 65 Fla. 404, 62 So. 919 (1913). As such, they are uniquely susceptible to the kind of uniform county-wide regulation provided by Dade County's franchise agreement with FP&L. As was noted earlier, Ordinance No. 60-16 deals with such matters as the location, construction and maintenance of transmission facilities, expressly bringing them under the supervision of the County Commission. We find this authority to be entirely consistent with the kind of uniform governance which was contemplated by the Legislature when it proposed the Home Rule Amendment and which was later endorsed by the Supreme Court in Cowart, supra. See also City of North Miami Beach v. Metropolitan Dade County, 317 So.2d 110 (Fla. 3d DCA 1975).
We therefore hold that Dade County Ordinance No. 60-16 preempts the right of the City of Hialeah Gardens to enter into its own franchise agreement with FP&L.
We find no merit to the contention that Charter Section 1.01(A)(18) governs the procedure for the granting of franchises within the boundaries of individual Dade County municipalities. That section provides that the County Commission may:
"Set reasonable minimum standards for all governmental units in the county for the performance of any service or function. The standards shall not be discriminatory as between similar areas. If a governmental unit fails to comply with such standards, and does not correct such failure after reasonable notice by the Board, then the Board may take over and perform, regulate, or grant franchises to operate any such service. The Board may also take over and operate, or grant franchises to operate any municipal service if:

(a) In an election called by the Board of County Commissioners within the municipality a majority of those voting vote in favor of turning the service over to the county; or

(b) The governing body of the municipality requests the county to take over the service by two-thirds vote of its members, or by referendum." (Emphasis added.)
From the wording of this section, it is clear that it is meant to apply only to situations where the County in some manner is going to supplant the provision of an existent municipal service. Considering Section 1.01(A)(18) in pari materia with Section 1.01(A)(14), supra, we find that the latter section is applicable to county-wide franchise grants, whereas the former applies whenever the County wishes or is requested to "take over" a service which is otherwise being provided within a particular municipality. If we were to interpret Section 1.01(A)(18) as being the governing provision in this instance, the County would only be able to grant a county-wide franchise after receiving the necessary approval from each of Dade's municipalities individually. Such a cumbersome and fractionalized process is hardly consistent with the idea of an effective uniform plan of county-wide utility regulation.
We also find no merit in the argument that the County should be estopped from contending that Ordinance No. 60-16 is preemptive due to the County's apparent inaction in the face of at least five separate municipal franchise grants to FP&L since the passage of the ordinance in 1960. Even if the County's previous failure to assert its rights in this regard could be interpreted as tantamount to a representation that it would not attempt to frustrate future municipal franchise attempts, Hialeah Gardens could still not successfully argue estoppel, since the City has not demonstrated any detrimental change in position caused by reliance upon such a representation. See generally 12 Fla.Jur., Estoppel and Waiver, § 56 et seq.
*1180 Application of estoppel here would seriously hinder the utilization of a major facet of Dade County's Home Rule power. Under such circumstances, we will not restrain the assertion of an otherwise legitimate Charter function absent a clear showing of unjust consequences by the party seeking to effect the estoppel. See Florida East Coast Railway Co. v. City of Miami, 186 So.2d 533 (Fla. 3d DCA 1966).
Hialeah Gardens finally challenges the County's use of the FP&L franchise revenues to pay special obligation improvement bonds which were issued to finance the construction or acquisition of capital improvements, including county parks. Since there has been no contention that any of these capital improvements are to be constructed or the franchise revenues otherwise expended within Hialeah Gardens, the City claims that the County's use of the franchise fees violates Article VIII, Section 1(h) of the Florida Constitution. Section 1(h) provides that:
"Properties situate within municipalities shall not be subject to taxation for services rendered by the County exclusively for the benefit of the property or residents in unincorporated areas."
In responding to this argument, we initially note that it is predicated upon the presumption that franchise fees are in fact taxes. However, as the Supreme Court of Florida held in City of Plant City v. Mayo, 337 So.2d 966 (Fla. 1976), franchise fees are not taxes, but rather consideration paid by the utility for the grant of the franchise. Thus, the prohibitions of Article VIII, Section 1(h), are not applicable to the franchise fees exacted by the County from FP&L.
The final issue before us here involves the County's cross-appeal from the modification of the trial court's order upon the Village of Virginia Gardens' motions to intervene for purposes of rehearing and appeal. In this regard, the record clearly reflects that Virginia Gardens was allowed to intervene solely for the purpose of reviewing the propriety of the trial court's ruling insofar as it expressly applied to municipalities which had existing franchises with FP&L at the time of the trial.
Without expressing any opinion as to the merits of a declaratory action involving those Dade County municipalities which have operative franchise agreements with FP&L, we find that municipalities in this class should have been joined if their rights were to be determined by declaratory decree. See Section 86.091, Florida Statutes (1975). Thus, it was within the province of the trial judge to modify the final order to the extent that it applied to municipalities with existing franchises.
For the above reasons, the final order of the trial court is in all respects affirmed.
Affirmed.