583 So.2d 1373 (1991)
PEOPLE AGAINST TAX REVENUE MISMANAGEMENT, INC., et al., Appellants,
v.
COUNTY OF LEON, FLORIDA, Appellee.
No. 77572.
Supreme Court of Florida.
May 30, 1991.
*1374 Kenneth Muszynski, Tallahassee, for appellants.
Herbert W.A. Thiele, County Atty. and Michael L. Rosen and Susan L. Turner of Holland & Knight, Tallahassee, for appellee.
KOGAN, Justice.
We have on appeal on order of the Circuit Court of the Second Judicial Circuit validating a $60 million bond issue for construction of a new jail and other infrastructure improvements in Leon County. Jurisdiction is mandatory. Art. V, § 3(b)(2), Fla. Const.
This case comes to Court after much earlier litigation. The People Against Tax Revenue Mismanagement, Inc. (PATRM), is a corporation created about two weeks after passage of an optional sales tax in a local referendum in 1989 in Leon County. In this referendum, the voters approved a local-option sales tax as the revenue source securing the $60 million bond issue. PATRM's purpose is to scrutinize the workings of Leon County government, including matters associated with the local-option tax and the referendum election.
The day of its formation in 1989, PATRM filed suit against the Leon County Canvassing Board seeking an order setting aside the result of the referendum. PATRM alleged that Leon County officials and others had engaged in a variety of improprieties, including the misuse of public funds, employees, and facilities to support passage of the local-option tax, and the use of misleading ballot language. However, the trial court entered a summary judgment against PATRM on grounds it had failed to name the proper party.[1] This holding was upheld on appeal, and PATRM did not seek further review. People Against Tax Revenue Mismanagement, Inc. v. Leon County Canvassing Bd., 573 So.2d 31 (Fla. 1st DCA 1990).
Subsequently, PATRM amended the petition to name the City of Tallahassee and the County of Leon as defendants. However, PATRM voluntarily dismissed its complaint and then filed a "Motion for Writ of Certiorari as Ancillary Relief" in its then-pending appeal from the canvassing-board case. The First District characterized this document in the following terms:
In broad terms, appellants take issue with the trial court's attempt to schedule pretrial proceedings and to set the case for trial on the issues raised against the City and the County, who are neither parties to this appeal, nor parties to any action now pending below. After review, we find the motion to be totally frivolous... . We grant appellee's motion for an award of attorney fees and costs.
Id. at 33-34. PATRM also filed a suggestion that the judges of the First District should recuse themselves from the case, which was denied. Id. at 32.
During the course of the proceedings, PATRM filed a long series of motions and related papers attempting to disqualify judges of the Second Circuit from hearing the trial-level proceedings. These acts culminated in a petition for writ of prohibition filed in the First District. This petition was denied after the First District found the claims legally insufficient. People Against Tax Revenue Mismanagement, Inc. v. Reynolds, 571 So.2d 493 (Fla. 1st DCA 1990).
When the bond validation proceedings below were commenced, Leon County named PATRM as a defendant.[2] In this role, PATRM again raised many of the claims it previously had argued in the earlier proceedings discussed above. These form the central issues in this appeal.
PATRM argues that this Court cannot now validate the $60 million bond issue *1375 because of "serious questions over the validity of the sales tax election." However, this argument rests on two assumptions not supported by either the law or the record of this case. First, PATRM's brief consistently assumes that a bond validation proceeding is not a proper vehicle for addressing the validity of a bond referendum. For the reasons expressed more fully below, we do not agree with this assumption.
Second, while there are many vague allegations of impropriety, we find that most are very poorly substantiated in this record. Even in their totality, the facts supporting these allegations clearly are insufficient to require invalidation of the bond issue.
The most weighty of PATRM's allegations appears to be the fact that local governmental agencies used public funds and public resources to mount an informational campaign regarding the referendum. In this campaign, the agencies advocated that the optional tax was needed to remedy problems at the county jail and to meet local infrastructure needs such as the building of new or widened roadways. One county commissioner gave the following statement under cross-examination by PATRM's attorney:
There were some critical issues facing this community that needed to be addressed, the community needed to know what those issues were, and it was important that we got that information out to the community and that we made the choices clear to the community.
Other witnesses testified that county office equipment was used in this campaign and that many county employees assisted. At the proceeding below, PATRM's counsel argued that such acts were improper because they violated the "neutral forum" of the election.
Such a position, however, is tantamount to saying that governmental officials may never use their offices to express an opinion about the best interests of the community simply because the matter is open to debate. A rule to that effect would render government feckless. One duty of a democratic government is to lead the people to make informed choices through fair persuasion. We recently saw an example of such persuasion in President Bush's arguments to the American people and his lobbying efforts regarding the war with Iraq. These acts came at a time of intense controversy, when Congress was preparing to take a crucial vote either to support or condemn the use of military force in the Middle East.
In much the same sense, local governments are not bound to keep silent in the face of a controversial vote that will have profound consequences for the community. Leaders have both a duty and a right to say which course of action they think best, and to make fair use of their offices for this purpose.[3] The people elect governmental leaders precisely for this purpose. While we agree with PATRM that such acts must not be abusive or fraudulent, we find nothing in the record to show that the limit was crossed here.
Similarly, we do not agree that the wording of the ballot language unfairly biased the electorate. According to the documents submitted by PATRM, the following statement appeared on the ballot:

OFFICIAL BALLOT

SALES TAX REFERENDUM

LEON COUNTY, FLORIDA

September 19, 1989

"TAKE CHARGE ... IT'S YOUR FUTURE"

(LOCAL GOVERNMENT INFRASTRUCTURE SALES TAX)
Shall a one-cent local option sales tax for capital improvements be levied in Leon *1376 County for a period of 15 years in order to construct critical capital improvements; specifically: a court-ordered jail, law enforcement capital projects, road and traffic improvements identified in the Tallahassee-Leon County Year 2010 Transportation Plan, and other road and traffic improvements?
PATRM notes that the phrase "TAKE CHARGE ... IT'S YOUR FUTURE" was the campaign slogan used by persons who favored the tax. We agree that the use of a campaign slogan and the word "critical" reflect a slight lack of neutrality that should not be encouraged in ballot language. Government should never appear to be "shading" a ballot summary to favor one position or another.
However, the fact that some questionable language appears on the ballot is not itself enough to invalidate an entire referendum. Rather, the reviewing court must look to the totality of the ballot language, as such language would be construed by a reasonable voter. We have held that a court may interfere with the right of the people to vote on referendum issues only if the language in the proposal is clearly and conclusively defective. Askew v. Firestone, 421 So.2d 151, 154 (Fla. 1982). Typically we have overturned an election because of defective ballot language where the proposal itself failed to specify exactly what was being changed, thereby confusing voters. Id.; Wadhams v. Board of County Comm'rs, 567 So.2d 414, 416-17 (Fla. 1990). This especially is true if the ballot language gives the appearance of creating new rights or protections, when the actual effect is to reduce or eliminate rights or protections already in existence. Askew, 421 So.2d at 154.
Here, we see no similar defect. The ballot language clearly and unambiguously stated that the voters were imposing upon themselves "a one-cent local option sales tax for capital improvements" in Leon County.
The campaign slogan appearing on the ballot does no more than urge voters to "take charge ... it's your future." Some voters might "take charge" by voting yes; others easily might "take charge" by voting no. Thus, this particular language lacks neutrality only implicitly, because it was the campaign slogan of persons favoring the tax. Moreover, identifying capital projects as "critical" in no sense renders this ballot so confusing or imprecise as to be clearly and conclusively defective. It is not reasonable to conclude that the voters of Leon County were so easily beguiled by a few arguably non-neutral words, when the remainder of the ballot plainly stated that a "yes" vote meant new taxes would be imposed.
We therefore are constrained to approve the trial court's finding that there was nothing in "the referendum election with respect to the sales tax that constituted any breach of public trust nor was any action by those public bodies affirmed by any fraud on the electorate or gross wrongdoing or with any substantial violations of law."
PATRM also contends that the trial judge below erred in not joining the Leon County Canvassing Board as a defendant. This argument is wholly without merit. Nothing in the relevant bond validation statutes or the relevant election laws requires the canvassing board to be a party to this proceeding. §§ 75.02, 100.321, Fla. Stat. (1989).
Next, PATRM argues that the proceedings below were too summary in nature and failed to meet the requirements of due process. However, the record discloses that PATRM made virtually no argument in the trial court below that the proceedings had deprived it of a meaningful opportunity to participate in the proceedings, present evidence, and make argument. Indeed, when PATRM filed a belated request for continuance, the trial court denied the request in part because PATRM had received almost a month's advance notice. If PATRM legitimately needed more time to prepare its argument and evidence, it should have so informed the trial court and placed on the record the specific reasons why the time already given was not sufficient.
*1377 Here, no such showing was made. The notice and other procedural requirements of sections 75.05 and 75.07, Florida Statutes (1989), were clearly met, as were the requirements of Florida law governing taxpayer challenges to referenda of the type at issue here. § 100.321, Fla. Stat. (1989). The trial court's judgment, which we sustain today, thus is "forever conclusive as to all matters adjudicated against plaintiff and all parties affected thereby." § 75.09, Fla. Stat. (1989).
In its next argument, PATRM contends that the only proper method of resolving the election dispute in this instance was the procedure established by section 102.168, Florida Statutes (1989). This statute requires the county canvassing board to be the named defendant in taxpayer lawsuits challenging elections. Thus, PATRM argues that Leon County lacks standing to litigate the merit's of PATRM's challenge to the referendum election.[4]
This argument is wholly meritless. Section 102.168 on its face is a general statute creating a procedure by which taxpayers (as plaintiffs) may challenge a disputed referendum by suing canvassing boards. Other more specific statutes,[5] however, address the question of bond validation proceedings and referenda in which voters have approved a tax to secure the bond issue in question. By their own terms, these other statutes grant standing to the county and create the exclusive remedy available to taxpayers in cases of this type.
Under section 75.02, the county (as a plaintiff) has express standing to litigate "its authority to incur bonded debt or issue certificates of debt and the legality of all proceedings in connection therewith, including assessment of taxes levied or to be levied." § 75.02, Fla. Stat. (1989) (emphasis added). The validity of a bond referendum is an issue inseparable from the validity of the tax assessment itself. Thus, chapter 75 is a proper vehicle for the issues presented in this case.
More to the point, section 100.321 clearly provides the exclusive remedies available to anyone wishing to challenge a referendum of the type at issue here. Under this statute, a taxpayer may file an action in the circuit court of the county where the vote was held, within sixty days after the posting of election results. The only necessary defendants are any county commission or municipal government that authorized the referendum, not the canvassing board. § 100.321, Fla. Stat. (1989). Thus, PATRM's argument that it was required to sue the canvassing board is not well taken.
Moreover, the statute plainly states that the opportunity for taxpayers to file a lawsuit challenging the referendum is closed as soon as a bond validation proceeding is filed in the same matter:
In the event proceedings shall be filed in any court to validate the bonds, which have been voted for, then any such taxpayer shall be bound to intervene in such validation suit and contest the validity of the holding of the referendum or the declaration of the results thereof, in which event the exclusive jurisdiction to determine the legality of such referendum or the declaration of the results thereof shall be vested in the court hearing and determining said validation proceedings... . [T]he judgment in said validation proceedings shall be final and conclusive as to the legality and validity of the referendum and of the declaration of the results thereof, and no separate suit to test the same shall be thereafter permissible.
*1378 § 100.321, Fla. Stat. (1989) (emphasis added).
It could not be plainer that the county had standing to bring this suit, that the court below had exclusive jurisdiction over questions regarding the referendum, and that PATRM's sole remedy was to intervene in the validation proceeding once it had commenced. Even if PATRM had continued its earlier lawsuit against the city and county, the court hearing that suit would have been required to dismiss the action as soon as the validation complaint was filed; and PATRM then could have continued its separate legal challenge only by intervening in the validation proceedings. Id. Once the plaintiffs joined PATRM or any other taxpayer as a defendant,[6] that taxpayer was under an obligation to advance all objections to the validity of the referendum in the proceeding below or be forever barred from raising them again. Id.
Next, PATRM argues that the public notice for the bond validation was inadequate because it failed to tell the public that "any issues over the validity of the sales tax election remained outstanding." We find this argument utterly without merit. Leon County clearly complied with the bond validation and election statutes.
Next, PATRM raises a variety of issues regarding the propriety of the referendum election, some of which partially duplicate its earlier arguments. However, the new allegations of impropriety raised by PATRM either are trivial or have absolutely no bearing on the overall validity of the referendum. Nor can we agree that any sort of "cumulative error" occurred that would invalidate the referendum vote.
As its final issue, PATRM argues that the trial judge should have disqualified himself from hearing this case because of alleged bias. We find PATRM's argument without merit.
For the foregoing reasons, the order of the court below validating a $60 million bond issue for improvements in Leon County is affirmed in all respects. We specifically affirm the trial court's conclusion that the bond issue is for a proper and lawful purpose fully authorized by law. The building of a jail, the construction and renovation of roads, and the financing of infrastructure clearly are valid public purposes justifying the issuance of these bonds.
It is so ordered.

ON DENIAL OF REHEARING
In its petition for rehearing, PATRM calls to this court's attention the technical fact that its members had organized themselves as a political action committee prior to the referendum, and only as a corporation afterward. We have corrected the opinion to reflect this fact. Obviously, this factual error in no sense changes the result of the opinion above.
PATRM also argues on rehearing that the referendum was not a "bond referendum" within the meaning of section 100.321, Florida Statutes (1989). It is true that the Leon County referendum was organized under authority of section 212.055(2), Florida Statutes (1989). However, there is no question that the purpose of this referendum was to approve or disapprove a source of funds to secure a bond issue. Whenever this is the case, section 100.321 applies.
Finally, we are mindful of PATRM's argument that its members have been "singled out" as defendants, unlike other taxpayers. Clearly, local government cannot engage in such practices if the purpose is merely to harass or "punish" a particular taxpayer or group of taxpayers. In such instances, the trial court on a proper motion should impose appropriate sanctions on the local government. However, we find no such purpose here. PATRM itself was the one that initiated the complicated series of lawsuits and court petitions described above. Whenever a party initiates litigation, that party assumes the risks associated with that decision.
*1379 Finally, PATRM argues that the "petition for ancillary relief" it filed with this Court constitutes an attempt to seek review of the two earlier district court opinions (described above) involving the issues of this case. Any such "petition for ancillary relief"  even if it were authorized by the rules of procedure  is not a proper vehicle for appealing a lower court decision. Even a cursory review of the rules shows this to be the case. Counsel's argument on this point is utterly without merit. By choosing not to appeal the lower court opinions in the proper manner, counsel has bound his client to the full legal effect of those opinions, under the doctrine of res judicata.
Petition for rehearing is denied. The petition for ancillary relief is unauthorized by the rules of court, is a nullity, and thus is stricken from this record.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES and HARDING, JJ., concur.
NOTES
[1] This conclusion was undeniably correct. See § 100.321, Fla. Stat. (1989).
[2] As PATRM itself notes, the plaintiffs named PATRM as a defendant because at least some of the legal claims PATRM has raised against the bond issue remained unresolved. Although PATRM's briefs view the plaintiffs' actions in a very sinister light, we see nothing improper with the decision to join PATRM as a defendant. Chapter 75, Florida Statutes, clearly contemplates that a bond validation proceeding is a proper vehicle for quieting all legal and factual issues that may cast doubt on the legal validity of a bond issue. To this end, the statute makes all taxpayers and property owners of the jurisdiction necessary defendants in the bond validation action, including those who happen to be members of political action committees. § 75.02, Fla. Stat. (1989). Nothing in the statutes forbids the county from joining as a defendant any corporation such as PATRM that publicly announces its belief that a bond referendum was unlawfully conducted.
[3] "Fair use," of course, does not imply a right to ignore the requirements of other law, especially Florida's governmental ethics code.
[4] Obviously, the doctrine of res judicata applies to the extent that PATRM is attempting to argue that the canvassing board is a proper opposing party. This issue was resolved against PATRM in an unappealed opinion of the First District. People Against Tax Revenue Mismanagement, Inc. v. Leon County Canvassing Bd., 573 So.2d 31 (Fla. 1st DCA 1990). However, PATRM now argues the somewhat different issue that the county lacks standing in the present case because of section 102.168, Florida Statutes (1989). We therefore proceed to the merits of the issue.
[5] A specific statute always prevails over a general statute to the extent of any irremediable inconsistency. Adams v. Culver, 111 So.2d 665 (Fla. 1959). In effect, the former is construed as an exception to the latter.
[6] Section 100.321 does not foreclose the possibility of the plaintiff joining specific taxpayers as defendants. It merely specifies that the taxpayers' sole remedy is to intervene in the validation proceeding once it has commenced. § 100.321, Fla. Stat. (1989).