Mr. Robert R. McDonald Attorney, Florida Association of Court Clerks, Inc. Post Office Drawer 1838 Tallahassee, Florida 32302
Dear Mr. McDonald:
On behalf of the Honorable Ed Brooks, Clerk of the Circuit Court of Putnam County, you ask the following question:
Is a county payment to the Florida Association of Counties, to be used for the stated purpose of educating the electorate as to a proposed constitutional amendment, a permissible expenditure of county funds?
In sum:
County funds may be paid to the Florida Association of Counties, a nonprofit corporation, to be used for the stated purpose of educating the electorate as to a proposed constitutional amendment affecting the county if the county commission makes the requisite legislative findings as to the purpose of the expenditure and the benefits accruing to the county, and if sufficient safeguards are adopted to ensure that such funds are being used for the purpose for which they are intended.
Initially, it should be noted that any question regarding such payment arising under the Florida Election Code or the Code of Ethics should be referred to the Division of Elections in the Department of State or to the Florida Commission on Ethics, respectively, for resolution. The Division of Elections is authorized to render opinions regarding the interpretation of the Florida Election Code, while the Ethics Commission has been vested by the Legislature with the authority to issue opinions regarding the interpretation of the Code of Ethics for Public Officers and Employees.[1] Accordingly, no comment is expressed herein regarding the application of either code to the instant inquiry.
While the issue of public funds used to support or oppose an issue before the electorate has not been extensively litigated in this state, the Supreme Court of Florida in People Against Tax RevenueMismanagement, Inc. v. County of Leon[2] considered whether a local government could use public funds and resources to mount an informational campaign regarding a referendum authorizing a sales tax increase. It was argued that the campaign was improper because county agencies did not maintain a neutral position but rather advocated that the optional tax was needed. In response, the unanimous Court stated:
"Such a position, however, is tantamount to saying that governmental officials may never use their offices to express an opinion about the best interests of the community simply because the matter is open to debate. A rule to that effect would render government feckless. One duty of a democratic government is to lead the people to make informed choices through fair persuasion. . . . [L]ocal governments are not bound to keep silent in the face of a controversial vote that will have profound consequences for the community. Leaders have both a duty and a right to say which course of action they think best, and to make fair use of their offices for this purpose. The people elect governmental leaders precisely for this purpose."[3]
The Court, however, stated that "fair use" does "not imply a right to ignore the requirements of other law, especially Florida's governmental ethics code."[4] Thus, the Supreme Court of Florida has recognized that a county may, subject to certain conditions, expend county funds to support or oppose an issue deemed by the county commission to be in the county's interests.
This office has taken a similar position in considering this issue. In Attorney General Opinion 86-87, this office stated that a county may expend public funds to publicly advertise its position in a referendum, provided that prior to making such an expenditure the county commission makes the appropriate legislative findings as to the purpose of the expenditure and the benefits that would accrue to the county therefrom.[5] In Attorney General Opinion 84-17, this office concluded that the expenditure of state funds by legislators to support or oppose the adoption of a proposed constitutional amendment could be authorized by the Legislature if it determined that such expenditure was in the public's interest.
Accordingly, I am of the opinion that a county may expend county funds to support or oppose an issue before the electorate, provided that the county commission makes the requisite legislative findings as to the purpose of the expenditure and the benefits accruing to the county from such expenditure. Such a determination is one that the board of county commissioners, as the legislative and governing body of the county, must make; it cannot be delegated to this, or any other, office.
Your inquiry, however, concerns not only the expenditure of county funds to support or oppose the proposed constitutional amendment, but also the payment of such funds to the Florida Association of Counties, a nonprofit corporation, to be used for such purposes. The courts and this office have recognized that when a public purpose is involved, a county or municipality may accomplish this purpose through the medium of a nonprofit quasi-public corporation.
For example, in O'Neill v. Burns[6] the Supreme Court of Florida concluded that it is only when there is some clearly identified and concrete public purpose as the primary objective, and a reasonable expectation that such purpose will be substantially and effectively accomplished, that the state or its subdivision may disburse, loan, or pledge public funds or property to a nongovernmental entity such as a nonprofit corporation. In addition, there must be some control retained by the public authority to avoid frustration of the public purpose.
Similarly, this office in Attorney General Opinion 72-198 stated that it was appropriate to expend municipal funds to contribute to a private nonprofit organization that rehabilitates drug addicts because the rehabilitation of such addicts served a public purpose. The opinion concluded that the procedures for payment of municipal funds and periodic auditing of the organization's records appeared to be sufficient safeguards to ensure that municipal funds were being used to fulfill the municipal purpose.[7]
In the case of Burton v. Dade County,[8] the Supreme Court, in considering the appropriateness of the expenditure of county funds for the construction of a county planetarium — which was then to be supervised and operated by a nonprofit, quasi-public corporation — stated that "the wisdom or advisability of making [an] expenditure [of county funds] in any particular instance, is the responsibility of the governing authorities of the county." This office has also recognized that the presence of a public purpose is ultimately a factual determination for the Legislature (in this case the legislative and governing body of the county) or the courts, but that initially there must be both some clearly identified and concrete public purpose as a primary objective, and a reasonable expectation that the purpose will be accomplished.[9]
Accordingly, I am of the opinion that county funds may be paid to the Florida Association of Counties, a nonprofit corporation, to be used for the stated purpose of educating the electorate as to a proposed constitutional amendment affecting the county, if the county commission makes the requisite legislative findings as to the purpose of the expenditure and the benefits accruing to the county and if sufficient safeguards are adopted to ensure that such funds are being used for the purpose for which they are intended.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] See, ss. 106.23(2) and 112.322(3), Fla. Stat., respectively.
[2] 583 So.2d 1373 (Fla. 1991). Prior to the Supreme Court's opinion in People Against Tax Revenue Mismanagement, Inc. v.County of Leon, the Fourth District Court of Appeal in Palm BeachCounty v. Hudspeth, 540 So.2d 147 (Fla. 4th DCA 1989), stated that while a county could allocate tax dollars to educate the electorate on the purpose and essential ramifications of referendum items, it should not favor one side of any issue since the funds collected from taxpayers theoretically belong to proponents and opponents of county action alike. To the extent that the Supreme Court in People Against Tax RevenueMismanagement, Inc., supra, concluded that public officials have a right and duty to use their offices to express an opinion about the best interests of the community, the court's conclusions inHudspeth, supra, would appear to be modified.
[3] 583 So.2d at 1375.
[4] Id. at 1379 n. 3.
[5] And see, Op. Att'y Gen. Fla. 74-113 (1974), in which this office, recognizing the home rule powers of municipalities, concluded that the governing body of a municipality, as the legislative body of that governmental unit, could expend municipal funds to purchase newspaper advertisements supporting or opposing the repeal of a county utilities tax which it determined affected the interests of the municipality and its citizens. Accord: Ops. Att'y Gen. Fla. 74-227 (1974) (municipal funds may be used to support or oppose question of annexation as it is a matter affecting interests of municipality and its citizens); and 78-41 (1978) (municipality may expend funds to support a bond issue).
[6] 198 So.2d 1, 4 (Fla. 1967).
[7] And see, Ops. Att'y Gen. Fla. 71-150 (1971) (contributions to the Red Cross blood bank from county funds authorized when such contributions are made on an item-by-item basis after each claim has been audited and approved by the county commissioners and clerk); 83-6 (1983) (municipality may contribute directly, or indirectly through the purchase of equipment, to a nonprofit, quasi-public corporation's football program if such a program is open to the public and satisfies a need for a public recreation program); 75-71 (1975) (public purposes may be carried out through private nonprofit corporations as well as through public agencies).
[8] 166 So.2d 445, 447 (Fla. 1964).
[9] See, Op. Att'y Gen. Fla. 77-27 (1977).