SHEPHERD, J.
This is an appeal from an order rendered by the trial court enjoining Lester Sola, Miami-Dade County’s Supervisor of Elections, from tabulating the results of the election on a proposed amendment to the Miami-Dade County Home Rule Charter on the ground that it fails the ballot accuracy requirements of section 101.161(1), Florida Statutes (2007).[1] On de novo review, see Armstrong v. Harris, 773 So.2d 7, 11 (Fla.2000), we affirm the decision of the trial court.
The voters of Miami-Dade County presently are casting their ballots on the following ballot measure, the ballot title and summary of which reads as follows:
COUNTY CHARTER AMENDMENT CREATING UNIFORM COUNTYWIDE FIRE AND RESCUE SERVICE AND PRESERVING EXISTING CITY SERVICE
SHALL THE CHARTER BE AMENDED TO REQUIRE THAT THE BOARD OF COUNTY COMMISSIONERS PROVIDE A UNIFORM, COUNTYWIDE SYSTEM OF FIRE PROTECTION AND RESCUE SERVICES FOR ALL INCORPORATED AND UNINCORPORATED AREAS OF THE COUNTY WITH THE EXCEPTION OF THE CITIES OF MIAMI, MIAMI BEACH, HIALEAH, CORAL GABLES, AND KEY BISCAYNE *458 WHICH MAY PROVIDE FOR FIRE AND RESCUE PROTECTION SERVICES WITHIN THOSE CITIES?
(emphasis added). If the proposal passes, the system by which fire and rescue services are provided to the citizens of Miami-Dade County will not change. For nearly thirty years, the Miami-Dade County Fire Rescue District, a special taxing district, has provided fire and rescue services for all incorporated and unincorporated areas of the County, with the exception of five cities, Miami, Miami Beach, Hialeah, Coral Gables, and Key Biseayne, which remain exempt under the proposed charter amendment. See Miami-Dade County, Fla., Code ch. 18, art. II (2007). The obligation merely will be memorialized in the County Charter rather than County Code, as it has for these many years.[2]
The appellees, the Village of Pine-crest and Village of Indian Creek (the Villages), claim: (1) the ballot title is misleading because it implies there has not heretofore existed a “uniform countywide fire and rescue service,” and (2) the ballot summary is misleading because it fails to advise voters that it curtails their right to establish their own system. The provision of the Charter which the appellees claim the County fatally fails to mention in the ballot summary reads as follows:
SECTION 6.02 MUNICIPAL POWERS
Each municipality shall have the authority to exercise all powers relating to its local affairs not inconsistent with this charter. Each municipality may provide for higher standards of zoning, service and regulation than those provided by the Board of County Commissioners in order that its individual character and standards may be preserved for citizens.
Miami-Dade County, Fla., Charter art. 6, § 6.02 (emphasis added).
Florida law, as codified in section 101.161 of the Florida Statutes, requires that voters must be told, in clear and unambiguous language, what the primary effect will be if the proposed Charter amendment is adopted. The Florida Supreme Court repeatedly has instructed that proposed amendments cannot “fly under false colors,” and that ballot questions cannot “hide the ball” to obtain necessary voter approval. Armstrong, 773 So.2d at 16. This proposal does both. It “flies under the false colors” of a title that promises to be “Creating [a] Uniform Countywide Fire and Rescue Service” when one has existed in Miami-Dade County for nearly thirty years, and “hides the ball” by purporting to create new rights for the citizens while actually curtailing or eliminating existing rights.
To fully appreciate the misleading nature of this ballot question, it is helpful to review the proposed Charter Amendment the ballot question seeks to approve. With a “Yes” vote on the ballot question, the County proposes to amend the Charter to insert the following initial paragraph into article 6, section 6.03 of the Charter:
Notwithstanding any other provision of Article 6, the Board of County Commissioners shall provide for a uniform, countywide system of fire protection services for all the incorporated and unincorporated areas of the county with the exception of the Cities of Miami, Miami Beach, Hialeah, Coral Gables, and Key *459 Biscayne which may provide for fire and rescue services in those cities. The fire and rescue protection services of those cities may be transferred to the county as provided in Section 1.01(a)(18).
(emphasis added). The County would have us believe that despite the fact the proposed Charter Amendment, if approved, will directly follow section 6.02, it nevertheless does not modify or curtail the rights granted therein to municipalities to provide for “higher standards of ... service” than those provided by the County. § 6.02. The County contends section 6.02 merely allows a municipality to which it provides its required service to contract with the Fire and Rescue District for delivery of additional fire and rescue services, as authorized elsewhere in the County Code. See Miami-Dade County, Fla., Code § 18-31 (2007). That is not so. With regard to fire and rescue services, section 6.02 must — and does — mean municipalities have a right to provide services independently of those services provided by the County.[3] The placement and language of the proposed amendment indicate that — contrary to the language of the ballot question — the amendment will have the primary effect of revoking certain long-held municipal rights. Nowhere in the ballot question is this primary effect stated or implied. This is contrary to law. See, e.g., Fla. League of Cities v. Smith, 607 So.2d 397, 399 (Fla.1992) (stating that the two ways in which a ballot summary may be clearly and conclusively defective are by “failing] to specify exactly what is being changed, thereby confusing voters,” or “giv[ing] the appearance of creating new rights or protections when the actual effect is to reduce or eliminate rights or protections already in existence” (quoting People Against Tax Revenue Mismanagement, Inc. v. County of Leon, 583 So.2d 1373, 1376 (Fla.1991))); Wadhams v. Bd. of County Comm’rs, 567 So.2d 414, 416 (Fla.1990) (holding voters were misled when not advised that the chief purpose of the county charter amendment was to curtail Charter Review Board’s presently-existing unfettered right to meet); Askew v. Firestone, 421 So.2d 151, 155-56 (Fla.1982) (holding voters were misled by ballot proposal to amend state constitution to permit former elected officials to lobby during first two years after departure upon filing of financial disclosure, but making no mention the amendment would supersede presently existing complete two-year ban); Kobrin v. Leahy, 528 So.2d 392, 393 (Fla. 3d DCA 1988) (holding voters misled by ballot proposal establishing Board of County Commissioners as the “governing body of the Metro-Dade Fire and Rescue Service District,” but making no mention of elimination of existing governing entity).
The County advances three arguments to justify the ballot question: (1) the County has complete power to control municipalities under the Charter’s provisions, and to preempt any municipal action with which the County does not agree; (2) section 6.02 of the Charter does not provide for an “opt-out” of the uniform, countywide fire district that has been in existence for almost thirty years; and (3) the ballot question is not misleading. The first argument made by the County was rejected by the Florida Supreme Court in the infancy of the implementation of metropolitan government in Miami-Dade County fifty years ago. In Miami Shores Village v. Cowart, 108 So.2d 468 (Fla.1959), one of many cases of the day sorting through the respective roles and responsibilities of the *460 former comparatively autonomous types of government that had existed and the new metropolitan form, the court recognized that the new plan was intended to be a “federated plan” in which the Charter:
providefs] for municipal autonomy as to the purely local functions or powers of the municipalities in Dade County; and as authorizing regulation and control by the Board on a county-wide basis of those municipal functions and services that are susceptible to, and could be most effectively carried on under, a uniform plan of regulation applicable to the county as a whole.
Id. at 471. Unlike the need for countywide control of traffic, at issue in Cowart, about which the Florida Supreme Court appropriately stated “[i]t is difficult to imagine a field in which a central metropolitan government could more effectively function [to] remov[e] the confusion, inequalities, and inequities resulting from a multiplicity of independent municipal ordinances .... ” id. at 473, thirty years of history has demonstrated that there exists no need to collectivize the provision of fire and rescue services. See also City of Coral Gables v. Burgin, 143 So.2d 859, 861 (Fla.1962) (regulation of plumbing trade not so peculiarly local as to justify city adopting, pursuant to a prior version of section 6.02, higher standards for plumber licensure within its borders than prescribed by county).
For its second argument, the County strongly protests that just a year ago, it repealed a provision — existing in article II, chapter 18 of the Code of Miami-Dade County since it originally was adopted— that provided municipalities an unfettered right to opt out of the County Fire and Rescue District. See Miami-Dade County, Fla., Ordinance Resolution 107-07 (passed and adopted July 24, 2007).[4] The County misses the point. The issue before us is not just whether section 6.02 of the Charter provides municipalities with the right to “opt-out” of the Fire and Rescue District. The issue is whether the ballot question explains that article 6 currently grants municipalities certain rights to provide services under certain circumstances, and that the proposed amendment to the Charter is a direct attempt to curtail those rights. It is self-evident from the language and placement of the proposed amendment to the Charter it is a direct attempt to curtail municipal powers set forth in article 6.[5]
*461 As to the County’s third argument, it is clear the ballot title and summary as it presently appears on the ballot are misleading, not only for what it falsely promises — the creation anew of something that already exists — but also what it fails to say, namely that it will reduce, rather than expand, the rights of the citizens of this County. For these reasons, we affirm the order under review.
This opinion shall take effect immediately, notwithstanding the filing of any motion for rehearing.
Affirmed.

. Section 101.161(1) reads in relevant part: Whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of such amendment or other public measure shall be printed in clear and unambiguous language on the ballot.... [T]he substance of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure.... The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.

. Because it contained an ad valorem tax based funding component, the creation of the District required voter approval. See Art. VII, § 9(b), Fla. Const. Dade County Ordinance 80-86 was passed and adopted by the Dade County Commission on September 2, 1980. The proposal was approved by a majority vote of the citizens of Dade County at a special election held on September 9, 1980.

. A determination as to the definition of the phrase “higher standard” in the context of section 6.02 is not necessary here because it is clear section 6.02 affords municipalities with the right to provide some alternative level of independent services.

. The County Commission's adoption of this resolution followed by two and three weeks respectively notices delivered to the County by the Village of Pinecrest and the Village of Indian Creek of their decisions to opt out of the County Fire and Rescue District pursuant to the existing provision, but before the Villages could hold required resident-ratification votes. Notably, the Village of Indian Creek, which was permitted to proceed with their vote by the court below over County opposition in related enforceability litigation, voted unanimously to opt out. The decision by the County Commission to propose the Charter Amendment which generated this appeal followed trial court rulings in that litigation indicating that the Villages might nevertheless have the right under section 6.02 of the Charter to provide their own fire and rescue services.

. Although the County spiritedly argues here that its proposed Charter Amendment does not curtail any rights of municipalities under section 6.02 of the Charter, it was not so sanguine about this point below. In colloquy with the trial court, the following exchange appears:
THE COURT: I understand the argument. The real purpose of this ballot amendment is to make sure that no more municipalities opt out. Okay.
MR. ROSENTHAL: Yes, Your Honor.
THE COURT: As you said, that would certainly be the effect.
MR. ROSENTHAL: That would be one effect, yes.
THE COURT: Okay. Why do you believe it is not necessary for the ballot summary to have some language to that effect?
*461 MR. ROSENTHAL: Well, because the people voting on it will know
[[Image here]]
Of course, the people will not know. See Askew, 421 So.2d at 156. (“The burden of informing the public should not fall only on the press and opponents of the measure. ...”).